[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 24, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-14984

_____

D. C. Docket No. 00-00953-CV-TWT-1

PAUL D. LAPIDES,

Plaintiff-Appellee,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA,
EDWIN A. RUGG, Personally and in his capacity as
Vice-President of Academic Affairs at Kennesaw State University, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 24, 2001)**

Before WILSON and COX, Circuit Judges, and RYSKAMP*, District Judge.

_____
*Honorable Kenneth L. Ryskamp, U.S. District Judge for the Southern District of
Florida, sitting by designation.

WILSON, Circuit Judge:

The issue is whether a state's removal of a case to federal court constitutes a waiver of Eleventh Amendment immunity. We decide that it does not.

BACKGROUND

In August 1997, Kennesaw State University began an investigation of one of its professors, Paul Lapides, after a student accused him of sexual harassment. The university investigation produced no corroborating evidence to support the allegation and no action was taken against Lapides. Lapides alleges that as a result of the incident he became aware of letters fabricated by fellow faculty members containing defamatory statements about him and the sexual harassment accusations. He contends that those letters, which were disseminated to others on the faculty, are now part of his personnel file and they have interfered with his eligibility for various faculty positions and promotional opportunities.

Lapides sued the Board and the individual defendants under 42 U.S.C. § 1983 and the Georgia Tort Claims Act, O.C.G.A. § 50-21-23, in the Superior Court of Cobb County, Georgia, alleging that the actions of University officials deprived him of his right to due process of law as well as his liberty and property interests in practicing his profession which are guaranteed to him by the Fourteenth Amendment to the United States Constitution. The Georgia Attorney General filed

a notice of removal to the Northern District of Georgia based on the court's original jurisdiction over the federal questions presented by the section 1983 claims. At the same time, he also filed a motion to dismiss the section 1983 claims under Federal Rule of Civil Procedure 12(b)(6) stating, among other reasons, the Board's Eleventh Amendment immunity from suit.

The district court denied the motion and held that the State, through its Attorney General, waived its Eleventh Amendment immunity by removing the case to federal court and invoking the jurisdiction of that court.

## DISCUSSION

The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. It is well established, though not expressly stated in the Constitution, that the Eleventh Amendment also prohibits a state from being sued by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 20-21 (1890).

Although the Eleventh Amendment bars such suits, the Supreme Court has carved out exceptions. "First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment -- an Amendment enacted after

3

the Eleventh Amendment and specifically designed to alter the federal-state balance." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Second, a state may consent to suit, but the test for determining whether a state has waived its Eleventh Amendment immunity is a stringent one. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239-40 (1985). The United States Supreme Court stated that "a State will be deemed to have waived its immunity 'only where stated "by the most express language or by such an overwhelming implication from the text as [will] leave no room for any other reasonable construction.'"'" *Id.* (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909))) (alteration in original). In fact, in *College Savings Bank*, the Court overruled the constructive waiver doctrine of *Parden v. Terminal Railway of the Alabama State Docks Department*, 377 U.S. 184 (1964). 526 U.S. at 680.[1]

The test to determine whether a state official is authorized to waive the State's Eleventh Amendment immunity is equally stringent. "[A] waiver of Eleventh Amendment immunity by state officials must be explicitly authorized by

_____

[1]The doctrine of constructive waiver permits abrogation of Eleventh Amendment sovereign immunity in cases where the State either: (1) acts as a market participant, i.e. in a manner typically related to wholly-private actors; or (2) performs some act that based on the surrounding circumstances would lead one to believe that the State has intended to waive its immunity. *See Parden*, 377 U.S. 184; *Coll. Sav. Bank*, 526 U.S. at 682-87.

4

the state 'in its Constitution, statutes and decisions.'" *Silver v. Baggiano*, 804 F.2d 1211, 1214 (11th Cir. 1986) (quoting *Ford Motor Co. v. Dept. of Treas. of Ind.*, 323 U.S. 459, 467 (1945)). In addition, the Supreme Court, in *Ford Motor Co.*, stated that such authority "is not to be presumed in the absence of clear language to the contrary." 323 U.S. at 468.

Several circuits have addressed the issue of the authority of a state's Attorney General to waive the State's immunity. *E.g. Santee Sioux Tribe of Neb. v. Nebraska*, 121 F.3d 427, 431-32 (8th Cir. 1997) (holding that there was no showing that waiver was within the authority of Nebraska's Attorney General); *Dagnall v. Gegenheimer*, 645 F.2d 2, 3 (5th Cir. 1981) (holding that the Attorney General of the state of Louisiana had no authority to waive the State's immunity). *But cf. McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1171 (10th Cir. 2000) (holding that the state Attorney General waived the State's immunity). However, we have never considered whether the Attorney General of Georgia has the authority to waive the State's immunity.

Turning to the text of Georgia's constitution and statutes, we find the following references enlightening as to when immunity is waived. The Georgia Constitution provides:

> The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which

5

specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

No waiver of sovereign immunity under this Paragraph shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.

Ga. Const. Art. I, § II, ¶ IX (e)-(f).[2]  Therefore, immunity in Georgia may be waived only through statute.

Section 45-15-3 of the Georgia Code sets forth the duties of the Attorney General.  It provides that the Attorney General must "represent the state in all civil actions tried in any court."  O.C.G.A. § 45-15-3(6).  This is the only section which conceivably could be seen as a grant of authority to the Attorney General to waive immunity.  However, it is not an unequivocal expression of authority.  In fact, in light of *Ford Motor Company*, the grant of power to the Attorney General to defend suits on behalf of the State is not an express grant of authority to the

---

[2]The Georgia Code explicitly reaffirms the applicability of sovereign immunity to the Board of Regents. *See* O.C.G.A. § 20-3-36.  However, with respect to the Georgia Tort Claims Act ("GTCA"), under which Lapides claims partially arise, the Georgia legislature has stated:

The state waives its sovereign immunity only to the extent and in the manner provided in [the GTCA] and only with respect to actions brought in the courts of the State of Georgia. The State does not waive any immunity with respect to actions brought in the courts of the United States.

O.C.G.A. § 50-21-23(b).  Therefore, immunity has been waived to the claims arising under the state tort law.

Attorney General to proceed with the case in any way he deems appropriate; something more is required to constitute a grant of authority to waive immunity, particularly when the State strictly construes the powers of the official. 323 U.S. at 468-69; *see also Walker v. Ga. Ry. & Power Co.,* 92 S.E. 57, 58 (Ga. 1917) (stating that "[t]he duties and powers of the attorney-general of this State are limited by the provisions of the Constitution and statutes . . . ."); *Bryant v. State,* 296 S.E.2d 792, 794 (Ga. Ct. App. 1982) (stating that a state official cannot perform acts not "within the scope of . . . statutory and constitutional provisions."). Thus, the Attorney General of the State of Georgia lacked the statutory authority to waive the State's Eleventh Amendment immunity and the legislature has not authorized a waiver of immunity specifically in this context.

Nonetheless, our inquiry does not end there. We have held that an unequivocal expression in the Constitution, statutes, or decisions of the state is not the only way a state can waive its Eleventh Amendment immunity. In *In re Burke*, we stated, "in the absence of explicit consent by state statute or constitutional provision, a state may consent to a federal court's jurisdiction through its affirmative conduct." *In re Burke*, 146 F.3d 1313, 1318 (11th Cir. 1998). Yet, this decision was necessarily a narrow one.

*In re Burke* involved the consideration of two cases in which the Department of Revenue of Georgia filed a proof of claim against debtors. *Id.* at 1315. Subsequently, the debtors filed an adversary action against Georgia. *Id.* In bankruptcy proceedings such as this, it is well established that he who invokes the jurisdiction of the bankruptcy court must abide by the consequences of that action. *Id.* at 1319. In fact, the Supreme Court has held that invoking the jurisdiction of a bankruptcy court can be deemed a waiver of immunity as can the intervention in a proceeding in which the government is not a party. *Gardner v. New Jersey*, 329 U.S. 565, 573-74 (1947) (holding that the state, when it invokes the jurisdiction of the bankruptcy court, must abide by the consequences of that decision and therefore waives its immunity); *Gunter v. A. Coast Line R. Co.*, 200 U.S. 273, 284 (1906) (holding that when a state voluntarily becomes a party to a cause, it cannot assert Eleventh Amendment immunity); *Clark v. Barnard*, 108 U.S. 436, 447 (1883) (holding that voluntary intervention constitutes a waiver of immunity).

In our discussion, we indicated the limited application of our holding in *In re Burke*, when we said, "We emphasize that our holding regarding the State's waiver of Eleventh Amendment immunity is quite narrow because the debtors seriously seek to recover only the costs and attorneys' fees incurred in enforcing the bankruptcy court's automatic stay and discharge injunction." 146 F.3d at 1319.

Thus, we provided a holding circumscribed by the context of bankruptcy proceedings, in which the State waived its Eleventh Amendment immunity by filing a proof of claim in the bankruptcy proceedings. *Id.*

The fact that we did not cite *Silver* in our decision in *In re Burke* is also quite telling as to its scope. In *Silver*, we discussed the authority of the Attorney General of Alabama to waive the State's immunity. 804 F.2d at 1214-15. Though not necessary to the ultimate disposition of the case because the parties conceded that the Attorney General did not possess the authority to waive immunity, we indicated our thoughts on whether removal of the case to federal court constituted a waiver of Eleventh Amendment immunity:

> It might be argued that the Eleventh Amendment immunity was waived by the removal of this case from state court to federal court. However, a waiver of Eleventh Amendment immunity by state officials must be explicitly authorized by the state 'in its Constitution, statues and decisions. . . .' Thus, removal by state officials of a suit containing state law claims to federal court does not amount to waiver of Eleventh Amendment immunity unless those state officials are authorized to waive such immunity.

*Id.* at 1214 (quoting *Ford Motor Co.*, 323 U.S. at 467) (citation omitted).

We clearly held that a state official must have the authority to waive the State's immunity under the Constitution, statutes, or decisions of the State. As we have already found that the Georgia Attorney General does not possess such

9

authority, that should be the end of the discussion. Yet, Lapides argues that our holding in *Silver* is inconsistent with *In re Burke* and with subsequent indications from the Supreme Court as to what it would do in such a case. *See Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 393-98 (1998) (Kennedy, J. concurring). More specifically, he argues, as the district court did, that requesting the jurisdiction of the federal courts is an affirmative act akin to the voluntary intervention into a suit by the State.

While we are also troubled by the seemingly inconsistent positions of the State by both asserting that the federal courts have jurisdiction to obtain removal, while simultaneously arguing with equal force that the federal courts do not have authority to hear the claims because of Eleventh Amendment immunity, we do not believe that either *In re Burke* or *Schacht* is inconsistent with our pronouncements in *Silver*.[3]

In *Schacht*, Justice Kennedy theorizes in his concurrence that if the issue of state official removal of a case to federal court were to arise, he would not find the holding of *Ford Motor Co.* to be an "insuperable obstacle to adopting a rule of

---

[3]"Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong." *United States v. Steele*, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc). Moreover, "we are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court." *Fla. League of Professional Lobbyists v. Meggs*, 87 F.3d 457, 462 (11th Cir. 1996).

10

waiver in every case where the State, through its attorneys, consents to removal from the state court to the federal court." *Id*. at 397. His statements that "a different case may be presented when a State under no compulsion to appear in federal court voluntarily invokes its jurisdiction," *Id*. at 395, has been adopted by at least one circuit. *See McLaughlin*, 215 F.3d at 1170-72; *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226 (10th Cir. 1999).

While Justice Kennedy's concurrence may provide some insight as to how he, at least, would come out on the issue in the future, we are presently bound by the actual holding of *Schacht*. In this analogous case, where state officials chose to remove a section 1983 claim to federal court, the Court was confronted with the issue of whether removal was appropriate in a case where the federal court lacked jurisdiction over some of the claims based on Eleventh Amendment immunity. *Id*. at 385. The Justices held that the presence of claims barred by the Eleventh Amendment "does not destroy removal jurisdiction that would otherwise exist." *Id*. at 386. They then went on to state that the proper action of the district court would be to hear only those claims that are not barred and to remand to state court the other claims. *Id*. at 392-93. The logic of the Court's opinion does not undercut our holding in *Silver* and in fact supports our holding in this case.

We also find some of the reasoning of *In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d 1140 (4th Cir. 1997), persuasive on this issue. There, the Fourth Circuit distinguished between defending a suit and filing a proof of claim in a bankruptcy proceeding. *Id.* at 1149. The Fourth Circuit did not find waiver where the only action by the State in federal court was defense of a suit and no proof of claim was filed. *Id.* The court reasoned that waiver was necessary with regard to filing a proof of claim because it would be unfair to permit the state to file a proof of claim and, at the same time, allow them to "strip the defendant of valid defenses because they might be construed to be affirmative claims against the state." *Id.* at 1148. The panel, nonetheless, felt that absent the filing of a proof of claim and the authority of the Maryland Attorney General to waive immunity, such a waiver could not be implied. As such, cases in which the State files a proof of claim are distinguishable from other cases, for it is possible for states to gain an unfair advantage in those cases if they are also allowed to assert their sovereign immunity at the same time. *Id*.

The present case did not find its way into our courts because of a state initiated cause of action, rather Lapides filed suit and the State removed to theoretically take advantage of our superior knowledge of the federal questions

involved in the case.[4]  This coupled with the fact that past cases have held that Eleventh Amendment immunity may be asserted at any point in a case, *see Fla. Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 683 n. 18 (1982) (stating that Eleventh Amendment immunity may be asserted for the first time on appeal); *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) (same), and may be raised by a court *sua sponte, see Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 524, 525 n.8 (1982), we find that our pronouncements in *Silver* stand.[5]

Therefore, we hold that the defendants did not waive their Eleventh Amendment immunity by removal of the case.  The district court is instructed to hear only those non-barred claims over which it has jurisdiction and remand the others to state court.  If no such non-barred federal questions exist, the whole case is to be remanded to state court.

REVERSED AND REMANDED.

---

[4]This is, in fact, what the State argues in its brief for this case.  Therefore, we proceed based on their arguments and disregard the possibility that the assertion of sovereign immunity may in fact lead to a situation in which there are no claims over which the federal courts have jurisdiction.

[5]In *College Savings Bank*, the Supreme Court held that the voluntariness of waiver is destroyed when the state is forced to choose between refusing to waive immunity and the exclusion from a lawful activity. 527 U.S. at 687.  Therefore, it could be argued, as defendants in this case do, that waiver would be involuntary in a case in which the State is forced to choose between the forum of its choice and immunity.  We would be reluctant to base any part of our holding on that ground, however, for it seems that both plaintiff and defendant are mutually excluded from the federal forum in that scenario and thus no strategic or other disadvantage is evident.