**Barbara RAMEY, et al., Plaintiffs**

v.

**GA. DEPT. OF CORRECTIONS,
et al., Defendants**

**No. 5:00–CV–264–2(WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 20, 2001.

Robert M.N. Shaker, Mr., for Barbara Ramey, Individually and Administrator of the Estate of Danny James Iler, Michael James Iler, Individually and as surviving son of Danny James Iler, plaintiff.

Jacqueline F. Bunn, Ms., Atlanta, for Georgia Department of Corrections, Georgia Department of Corrections, George Smith, Warden, Warden, John Doe, Dr., John Doe, I, Officer, John Doe, II, Officer, defendants.

**ORDER**

OWENS, District Judge.

Before the Court is Plaintiffs' Motion to Remand this case to the Superior Court of Fulton County, Georgia. [Tabs 39 & 40].

Plaintiffs[1] contend that their claims alleging Defendants' deliberate indifference to a prisoner's medical needs should not

---

1. Plaintiffs are (1) Barbara Ramey, individually, and in her capacity as Administrator of the Estate of Danny Iler and (2) Danny James Iler and Michael James Iler, individually and as surviving sons of Danny Iler. Plaintiffs allege violations of the United States Constitution and Georgia law for the decedent Danny Iler's death that was allegedly in connection with inadequate medical care he received while in the custody of the Georgia Department of Corrections.

have been removed to this Court. Plaintiffs argue that recent Eleventh Circuit case law and the Eleventh Amendment to the United States Constitution require that this case be remanded because this Court does not have subject matter jurisdiction to hear the claims against the state Defendants.

Defendants contend that (1) Plaintiffs have not timely filed the motion to remand, (2) that this court does not in fact have jurisdiction over the state claims[2] and (3) that nevertheless this court should dismiss all of Plaintiffs' claims for failure to comply with the Georgia Tort Claims Act.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 8, 2000, Plaintiffs filed this lawsuit in the Superior Court of Fulton County, Georgia. In the Complaint, Plaintiffs alleged four separate claims against the Georgia Department of Corrections and several individual defendants in both their individual and official capacities.

On June 9, 2000, Defendants removed the case to this Court. Subsequent to the removal of this case, Plaintiffs dismissed the claim of Professional Malpractice. The remaining claims are: (1) a federal claim pursuant to 42 U.S.C. § 1983, (2) a state law claim pursuant to O.C.G.A. § 42–5–2[3] and (3) a state law claim pursuant to O.C.G.A. § 51–4–2[4]. On May 29, 2001, Defendants filed a Motion for Summary Judgment. On June 28, 2001, Plaintiffs filed the Motion to Remand. Defendants have filed a brief in opposition to the remand and requested that all claims be dismissed by this court and not remanded to state court. [Tab 45].

## II. DISCUSSION

### A. TIMELINESS OF PLAINTIFFS' MOTION TO REMAND

Defendants contend that Plaintiffs' Motion to Remand was not timely filed. Defendants argue that Plaintiffs only had 30 days from removal to request a remand. Since the Plaintiffs waited nearly a year, the Defendants contend the case should not be remanded.

■ Pursuant to 28 U.S.C. § 1447(c)

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Therefore, when a motion to remand is based on the district court's lack of subject matter jurisdiction, the motion may be made at any time. In the case at bar, Plaintiffs contend this court does not have jurisdiction to hear the case against the Defendants because the State of Georgia's Eleventh Amendment immunity has not been waived by the Attorney General when the case was removed to this Court. Therefore, Plaintiffs' Motion to Remand is based on subject matter jurisdiction and the motion can be filed at any time.

---

**2.** In Defendants' brief opposing remand, the Defendants' arguments closely follow that of the Plaintiffs' on the argument of non-waiver of Eleventh Amendment immunity.

**3.** This statute concerns the responsibilities of governmental units regarding custody of inmates generally, costs of emergency and follow-up care and access to medical services or hospital care for inmates.

**4.** This is the wrongful death statute.

## B. WAIVER OF ELEVENTH AMENDMENT IMMUNITY

Plaintiffs rely on a very recent case from the Eleventh Circuit Court of Appeals, *Lapides v. Board of Regents,* for their argument that the Attorney General for the State of Georgia lacks the statutory authority to waive the State's Eleventh Amendment immunity from suit in this case and therefore it should be remanded back to state court. *Lapides v. Bd. of Regents,* 251 F.3d 1372 (11th Cir.2001)[5]. In *Lapides,* a professor sued a state university and its officials in state court asserting employment claims under both federal and state law and the defendants removed the action to federal court. The plaintiff sought a remand of the case back to state court based on the Eleventh Amendment immunity doctrine. The court of appeals cited the Georgia Constitution for an explanation of state waiver of immunity from suit. The cited portion states that

> The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver. No waiver of sovereign immunity under this Paragraph shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.

*Id.* at 1375 (quoting Ga. Const. Art. I, § II, P IX (e)-(f)). The court further explained that "immunity in Georgia may be waived only through statute." *Id.* This principle is mandated by the Georgia Tort Claims Act ("GTCA"). The GTCA provides that the state of Georgia "waives its sovereign immunity only to the extent and in the manner provided in the GTCA and only with respect to actions brought in the courts of the State of Georgia. The State does not waive any immunity with respect to actions brought in the courts of the United States." *Id.* (quoting O.C.G.A. § 50–21–23(b)). Explaining the duties of the Attorney General, the court held that "the grant of power to the Attorney General to defend suits on behalf of the State is not an express grant of authority to the Attorney General to proceed with the case in any way he deems appropriate; something more is required to constitute a grant of authority to waive immunity, particularly when the State strictly construes the powers of the official." *Id.* (citation omitted). Thus, the court held, "the Attorney General of the State of Georgia lacks the statutory authority to waive the State's Eleventh Amendment immunity and the legislature has not authorized a waiver of immunity specifically in this context." *Id.* Based on these principles, the court of appeals instructed the district court to hear only those non-barred claims over which it had jurisdiction and remand the others to state court. If no such non-barred federal questions existed, the whole case was to be remanded to state court.

Based on this recent holding in *Lapides,* it seems that the court of appeals would have the claims in this case remanded back to state court. However, since *Lapides* dealt only with the Board of Regents and the court of appeals did not specifically hold that the principles were applicable to complaints filed against prisons, a further analysis was warranted that addressed the specific facts in this case. After research into these principles from other cases in this circuit dealing specifically with prison-condition cases, it is evident, as thoroughly explained in the case law below, that the principles announced in *Lapides* should be

---

5. The case was decided on May 24, 2001.

applied in all cases involving state agencies and officials.

In *Tennant v. Florida* [6], another district court recently addressed the issue of state immunity from suit and held that "The Eleventh Amendment to the United States Constitution states: 'The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Tennant v. Florida*, 111 F.Supp.2d 1326, 1329 (S.D.Fla.2000) (citing U.S. Const. Amend. XI). "The Amendment also equally bars suits against a state commenced by that state's own citizens." *Id.* at 1329–30 (citing *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 13–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). "Further, the Amendment bans suits against state officials where the state, in fact, is the real party in interest." *Id.* at 1330 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). "In general, these bans prohibit federal courts from exercising subject matter jurisdiction over private party suits filed against a state or state officials." *Id.*

However, three exceptions to this constitutional bar have been recognized by the Supreme Court. First, individual suits may proceed directly against a state if a state waives its sovereign immunity. See *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Second, individual suits against a state also may be adjudicated if Congress, pursuant to a valid exercise of congressional power, abro-

gates a state's immunity through a clear statement of its intent to abrogate. See Seminole *Tribe of Florida v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Finally, individual suits that seek prospective relief for ongoing violations of federal law also may be levied against state officials. See *Ex Parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Plaintiff does not seek prospective relief for any ongoing violations. Additionally, Congress has not abrogated [state] immunity through § 1983. See *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1525 (11th Cir.1990) ("Congress has not abrogated Eleventh Amendment immunity in section 1983 cases"); see also *Will v. Michigan*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

*Id.* The court then stated that after a consideration of these principles, two additional factors must be considered: (1) whether the agency involved is covered by that particular state's immunity, (in *Tennant* the question was whether Florida's Department of Law Enforcement was covered by the State of Florida's immunity), and (2) whether that particular state had waived its immunity from suit. The court held that, since the Florida Department of Law Enforcement is an agency of the state of Florida, the FDLE is covered by Florida's Eleventh Amendment immunity. The Florida sovereign immunity statute provided that

No provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunc-

---

**6.** This case was brought pursuant to 42 U.S.C. § 1983 and various state statutes and involved a claim against a state, the state department of law enforcement, and a municipality for having a policy or custom of inade-

quate training on how to handcuff a person who was recovering from cardiac surgery. The § 1983 claim was dismissed in its entirety and the court remanded the state claims back to state court.

tion with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court. This subsection shall not be construed to mean that the state has at any time previously waived, by implication, its immunity, or that of any of its agencies, from suit in federal court through any statute in existence prior to June 24, 1984.

*Id.* at 1331. The court held that this statute showed the Florida legislature's intent to not waive sovereign immunity in that case. Because the plaintiff failed to point to any evidence or legal support that would indicate the state had consented suit in federal court or in any way waived its immunity, the court dismissed the § 1983 claims against the State of Florida and the Florida Department of Law Enforcement.

After the court dismissed all of the federal claims, the only remaining claims were based on state law. The court held that "[s]tate courts, not federal courts, should be the final arbiters of state law." *Id.* at 1337 (citing *Hardy v. Birmingham Bd. of Educ.,* 954 F.2d 1546, 1553 (11th Cir.1992)). "When coupled with the court's discretion to exercise supplemental jurisdiction under § 1367(c), the court finds that the state law claims remaining in this action are best resolved by the Florida courts." *Id.* at 1337–38. "This is especially true here where the court is dismissing Plaintiffs' federal law claim prior to trial." *Id.* at 1338 (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (dismissal of state law claims strongly encouraged when federal law claims are dismissed prior to trial); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108

S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) ("When federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Eubanks v. Gerwen,* 40 F.3d 1157 (11th Cir.1994) (remanding case to district court to dismiss plaintiff's state law claims where court had granted summary judgment on plaintiff's federal law claims)). The court found "that judicial economy, fairness, convenience, and comity dictate[d] having these state law claims decided by the state courts" and the plaintiff's remaining state law claims were dismissed without prejudice and remanded to the state court. *Id.*

Several other cases from this circuit support this principle as well. In *Zatler v. Wainwright,* a former inmate sued the Florida Department of Corrections. The court of appeals held that "the [E]leventh [A]mendment 'partakes of the nature of a jurisdictional bar'" and courts are under a continuing duty to review jurisdictional issues. *Zatler v. Wainwright,* 802 F.2d 397, 399–400 (11th Cir.1986) (citing *Edelman v. Jordan,* 415 U.S. 651, 678 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974)). Quoting another case, the court of appeals held that the Eleventh Amendment has been applied to bar a prisoner's section 1983 damage claims brought in federal court against prison officials in their official capacities. *Zatler,* 802 F.2d at 400 (citing *Williams v. Bennett,* 689 F.2d 1370, 1376–77 (11th Cir. 1982)).

These identical principles were addressed in *Stevens v. Gay* where the plaintiff sought injunctive relief and attorney fees against the Georgia Department of Corrections. *Stevens v. Gay,* 864 F.2d 113 (11th Cir.1989). The court held that generally injunctive relief was allowed but not the attorney fees. *Id.* at 115. However, in that case, the court of appeals held that

the Eleventh Amendment barred the suit against the Department of Corrections and there was no indication of waiver of immunity. Because the court held that the state itself cannot be liable on the merits and because plaintiff failed to amend his complaint to add the state officials acting in their official capacities, the court of appeals affirmed the district court's dismissal of plaintiff's claim for prospective injunctive relief and the denial of plaintiff's petition for attorney's fees. *Id.*

 Based on the direction from these recent cases, it is apparent that the proper course of action would be for this Court to dismiss the federal claims and remand the remaining state claims to the Superior Court of Fulton County. After thorough research in the available case law and an examination of the record before the court, there is no evidence that the Attorney General of the State of Georgia either had the authority to or did in fact waive the state's sovereign immunity in this case. As held in *Lapides, supra,* the only statutory authority for waiver of immunity in this case comes from the Georgia Tort Claims Act which provides that immunity is only waived in cases brought in state court. That provision specifically states that immunity is not waived in cases brought in federal courts. The three exceptions stated in *Tennant* do not apply in this case either. First, the State of Georgia has not waived its immunity from suit in this case. Second, Congress has not abrogated state immunity through § 1983. Third, the Plaintiffs in this case seek monetary relief and not prospective injunctive relief. Therefore, there is no remedy available for the Plaintiffs in this Court because in this particular case this Court does not have jurisdiction over the State of Georgia and its agency, the Department of Corrections. Accordingly, the federal § 1983 claim should be dismissed with the remaining state claims remanded to state court for a determination of the applicability of the Georgia Tort Claims Act.

## III. CONCLUSION

The Plaintiffs' **Motion to Remand** this case to the Superior Court of Fulton County, Georgia is hereby **GRANTED in part and DENIED in part.** The **federal claim** filed pursuant to § 1983 is **dismissed** and the remaining **state claims** are **remanded** to the Superior Court of Fulton County, Georgia.